UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| IRIS A. TOLAND,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　Defendant. | No. ED CV 10-635-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on May 10, 2010, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed Consents to proceed before the undersigned Magistrate Judge on May 20, 2010, and May 21, 2010.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 3, 2011, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on August 23, 1955. [Administrative Record ("AR") at 56, 58, 272.] She has a high school education [AR at 272, 489], and has past relevant work experience as a waitress and a maid. [AR at 65-72.]

On September 22, 2004, plaintiff filed her application for Supplemental Security Income payments, alleging that she has been disabled since March 1, 2002, due to an ovarian cyst, a prolapsed mitro valve, anxiety, panic attacks, bipolar disorder, and a hysterectomy with removal of a tumor. [AR at 18, 41, 48-49, 58, 92-99.] After her application was denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). [AR at 41-54.] A hearing was held on October 3, 2006, at which time plaintiff appeared with counsel and testified on her own behalf. [AR at 269-87.] On November 15, 2006, the ALJ determined that plaintiff was not disabled. [AR at 15-26.] The Appeals Council denied plaintiff's request for review of the hearing decision. [AR at 5-10.] On August 20, 2007, plaintiff filed a complaint in this Court in Case No. ED CV 07-1004-PLA, challenging the ALJ's 2006 decision denying her benefits. [See AR at 311.] On October 20, 2008, judgment was entered remanding the case to defendant for further proceedings. [See AR at 310-25.] On remand, the ALJ held a hearing on January 8, 2010, at which time plaintiff appeared with counsel and again testified on her own behalf. [AR at 485-506.] On February 12, 2010, the ALJ again determined that plaintiff was not disabled. [AR at 288-97.] This action followed.

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

/

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

**A.     THE FIVE-STEP EVALUATION PROCESS**

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or

equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.   THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial gainful activity since September 22, 2004, the date of plaintiff's application for Supplemental Security Income payments. [AR at 293.] At step two, the ALJ concluded that plaintiff has the severe impairments of multiple joint pain and anxiety disorder, not otherwise specified. [Id.] At step three, the ALJ determined that plaintiff's impairments do not meet or equal any of the impairments in the Listing. [Id.] The ALJ further found that plaintiff retained the residual functional capacity ("RFC")[1] to perform medium work.[2] [AR at 294.] Specifically, the ALJ found that plaintiff "is capable of lifting and/or carrying 50 pounds occasionally and 25 pounds frequently; standing and/or walking 6 hours in an 8-hour workday; sitting without restrictions; performing such postural

---

[1]   RFC is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[2]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

4

activities as bending, kneeling, stooping, crawling, and crouching frequently; and walking on uneven terrain, climbing ladders, or working at heights frequently. She can perform simple and moderately complex tasks in a non-public work setting." [Id.] At step four, the ALJ concluded that plaintiff is capable of performing her past relevant work as a maid. [AR at 296.] Accordingly, the ALJ found plaintiff not disabled.[3] [AR at 296-97.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ failed to properly consider the opinions of: (1) consultative psychiatric examiner Dr. Minh-Khoi Duong; and (2) treating psychiatrist Dr. Imelda Alfonso. [Joint Stipulation ("JS") at 2.] As set forth below, the Court agrees with plaintiff, in part, and remands the matter for further proceedings.

**TREATING PHYSICIAN'S OPINION**

Plaintiff contends that the ALJ erred in rejecting the opinion of plaintiff's treating psychiatrist, Dr. Alfonso. Specifically, plaintiff contends that the ALJ in the 2010 decision did not properly follow this Court's remand order in Case No. ED CV 07-1004-PLA, in which the ALJ was directed to reconsider Dr. Alfonso's findings, and that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Alfonso's more recent opinion concerning plaintiff's limitations. [JS at 8-16.]

In determining plaintiff's disability status, the ALJ had the responsibility to determine plaintiff's RFC after considering "all of the relevant medical and other evidence" in the record, including all medical opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3),

/

/

---

[3] Although the ALJ found plaintiff not disabled at step four of the sequential evaluation process, and thus was not required to proceed to step five, the ALJ nonetheless continued his analysis and concluded at step five that "[c]onsidering [plaintiff's] age, education, work experience, and [RFC], there are other jobs that exist in significant numbers in the national economy that [plaintiff] can perform." [AR at 296.]

5

416.946(c); see Social Security Ruling[4] SSR 96-8p, 1996 WL 374184, at *5, *7. In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). See 20 C.F.R. §§ 404.1502, 404.1527, 416.902, 416.927; see also Lester, 81 F.3d at 830. Generally, the opinions of treating physicians are given greater weight than those of other physicians, because treating physicians are employed to cure and therefore have a greater opportunity to know and observe the claimant. Orn v. Astrue, 495 F.3d 625, 631 (9th Cir. 2007); Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). Despite the presumption of special weight afforded to treating physicians' opinions, an ALJ is not bound to accept the opinion of a treating physician. However, the ALJ may only give less weight to a treating physician's opinion that conflicts with the medical evidence if the ALJ provides explicit and legitimate reasons for discounting the opinion. See Lester, 81 F.3d at 830-31 (the opinion of a treating doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record); see also Orn, 495 F.3d at 632-33 ("Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is 'still entitled to deference.'") (citations omitted); SSR 96-2p (a finding that a treating physician's opinion is not entitled to controlling weight does not mean that the opinion is rejected).

Dr. Alfonso treated plaintiff for psychiatric disorders from February 2005 to at least November 2009. [AR at 194-99, 244-61, 268, 385-431.] On February 11, 2005, Dr. Alfonso performed an initial "Adult Psychiatric Evaluation" of plaintiff, in which Dr. Alfonso noted that plaintiff's mood/affect was depressed and anxious. [AR at 260-61.] Dr. Alfonso diagnosed plaintiff with bipolar II disorder, panic disorder without agoraphobia, and personality disorder, and she

---

[4] Social Security Rulings ("SSR") do not have the force of law. Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

6

assessed plaintiff with a Global Assessment of Functioning ("GAF") score of 40.[5] [Id.] On April 22, 2005, Dr. Alfonso completed a "Residual Psychiatric Disability" form and a "Mental Status Review" form, in which she opined that plaintiff had a moderate impairment in her ability to relate to others, a moderate restriction in her daily activities, a moderate deterioration of personal habits, and a moderate constriction of interests. Dr. Alfonso further opined that plaintiff had moderate limitations in her abilities to understand, carry out, and remember instructions; respond appropriately to supervision, co-workers, and work pressures; and perform simple, complex, repetitive, or varied tasks. [AR at 194.] Dr. Alfonso also noted that plaintiff had no memory, orientation, or judgment defects; delusions; hallucinations; autistic or regressive behavior; inappropriateness of affect; blocking; or illogical association of ideas. [AR at 195.] In a letter dated December 8, 2006, Dr. Alfonso stated that plaintiff had suffered from increasing panic attacks since 1989, causing her to experience shortness of breath, chest pains, difficulty breathing, and a choking sensation; mood swings with highs and lows for several years, but with more frequent and increasing episodes of depression accompanied by low energy and lack of motivation; increasing suicidal thoughts with no plan or intent; and feelings of worthlessness and hopelessness. [AR at 268.] Dr. Alfonso explained that plaintiff was being treated with Prozac, Risperdal, and Cogenten; that plaintiff's chronic low back pain aggravated her depression; and that plaintiff was homeless and had faced increasing financial problems that also seemed to worsen her mental condition. Dr. Alfonso further stated that plaintiff "needs financial assistance at this time and qualifies for [Supplemental Security Income] disability." [Id.]

/

---

[5] A GAF score is the clinician's judgment of the individual's overall level of functioning. It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000). A GAF score in the range of 31 to 40 indicates some impairment in reality testing or communication, or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. DSM-IV at 34.

Plaintiff was assigned a GAF score of 40 on two occasions prior to Dr. Alfonso's February 11, 2005, Evaluation (i.e., on January 21, 2005, and January 26, 2005) . [See AR at 262.]

In the October 20, 2008, Memorandum Opinion and Order in Case No. ED CV 07-1004-PLA, this Court concluded that the ALJ in the November 15, 2006, administrative decision had failed to properly consider Dr. Alfonso's 2005 and 2006 opinions regarding plaintiff's mental impairments. [See AR at 311-25.] Specifically, the Court determined that the ALJ provided inadequate reasons for disregarding the GAF score of 40 assigned to plaintiff by Dr. Alfonso and for rejecting Dr. Alfonso's opinions expressed in the April 22, 2005, Residual Psychiatric Disability and Mental Status Review forms. [See AR at 318-22.] The Court also found that the ALJ in rejecting Dr. Alfonso's findings had erred by selectively considering the medical evidence, and that the ALJ had failed to discharge his duty to develop the record by recontacting Dr. Alfonso to determine the basis of her opinions. [See AR at 322-25.] For these reasons, the Court remanded the case for proper consideration of Dr. Alfonso's findings. [AR at 325.]

Dr. Alfonso's treatment records were further developed on remand. [See AR at 385-431.] On September 4, 2009, Dr. Alfonso completed a Work Capacity Evaluation (Mental) form in which she opined that plaintiff was markedly limited in all sixteen of the work-related activities listed on the form.[6] [AR at 433-34.] Dr. Alfonso further opined that plaintiff is not a malingerer, plaintiff's

---

[6] The Evaluation form provided the following six ratings for each of the work activities listed on the form: 1) "None: Absent or minimal limitation. If limitations are present they are transient and/or expectable reactions to psychological stressors;" 2) "Slight: Some mild limitation in this area, but generally functions pretty well;" 3) "Moderate: more than slight but less than marked;" 4) "Marked: Serious limitations in this area. The ability to function in this area is severely limited but not precluded;" 5) "Extreme: Severe limitations in this area. No useful ability to function in this area;" and 6) "Unknown: Unable to assess limitations based on examination or review of medical records." [AR at 433.]

Dr. Alfonso opined that plaintiff was markedly limited in her abilities to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or in proximity to others without being distracted by them; make simple work-related decisions; interact appropriately with the general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans
(continued...)

8

1    impairments have lasted or would be expected to last at least 12 months, and plaintiff would likely
2    miss work three or more times each month due to her impairments or treatment. [AR at 434.]
3         The ALJ again rejected Dr. Alfonso's findings in the February 12, 2010, administrative
4    decision. Specifically, the ALJ cited and rejected Dr. Alfonso's September 4, 2009, Evaluation as
5    not having "a sh[r]ed of persuasive value." [AR at 295, citing AR at 433-34.] The ALJ did not,
6    however, address Dr. Alfonso's opinions expressed in the February 11, 2005, Adult Psychiatric
7    Evaluation, the April 22, 2005, Residual Psychiatric Disability and Mental Status Review forms,
8    or the December 8, 2006, letter. In rejecting Dr. Alfonso's findings expressed in the September
9    4, 2009, Evaluation, the ALJ contended that Dr. Alfonso had apparently completed it "without the
10   slightest thought to what was being asserted, namely that [plaintiff] was 'markedly' limited in the
11   performance of every mental function;" Dr. Alfonso's treatment of plaintiff did not support the
12   restrictions set forth in the Evaluation (i.e., had Dr. Alfonso truly believed that plaintiff was so
13   limited, "she should have had [plaintiff] hospitalized, confined, or at least under the care of a
14   guardian," as plaintiff "should not even leave her home unattended"); Dr Alfonso's opinion was
15   "grossly exaggerated, accommodative, and indulgent;" Dr. Alfonso's opinion was "thoroughly
16   rebutted" by the opinions and records of the treating and examining physicians; and plaintiff's
17   hearing testimony did not support the limitations assessed by Dr. Alfonso. [AR at 295-96.] As
18   explained below, the Court concludes that the ALJ failed to provide specific and legitimate reasons
19   supported by substantial evidence for rejecting Dr. Alfonso's treating opinion.
20        First, although an ALJ may properly reject a treating physician's opinion that is inconsistent
21   with the physician's prescribed treatment (see Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir.
22   2001)),"an ALJ may not make speculative inferences from medical reports" and "may [not] reject
23   a treating physician's opinion" based on "speculation or lay opinion." Morales v. Apfel, 225 F.3d
24   310, 317 (3d Cir. 2000) (citations and internal quotations omitted); see also Gonzalez Perez v.
25   Sec'y of Health and Human Servs., 812 F.2d 747, 749 (1st Cir. 1987) ("The ALJ may not

---

⁶(...continued)
independently of others. [AR at 433-34.]

substitute his own layman's opinion for the findings and opinion of a physician."). Here, the ALJ provided no support for his conclusory assertion that Dr. Alfonso should have had plaintiff hospitalized, confined, or committed to guardianship if she truly believed that plaintiff has the limitations represented in the September 4, 2009, Evaluation, and such a conclusory assertion, by itself, is insufficient to reject a treating physician's finding. See, e.g., Payne v. Astrue, 2009 WL 176071, at *6 (C.D. Cal. Jan. 23, 2009) (finding inadequate an ALJ's conclusory rejection of a treating physician's opinion as inconsistent with the medical treatment); Mashburn v. Astrue, 2010 WL 891632, at *5-6 (W.D. Mo. March 8, 2010) (ALJ improperly rejected the opinion of a physician who treated the plaintiff for bipolar disorder and depression on the basis that the physician did not recommend that the plaintiff be hospitalized). In fact, the definition of the term "marked" reflected in the Evaluation -- i.e., that plaintiff's ability to perform the listed activities is "severely limited but not precluded" [AR at 433] -- indicates that such extreme treatment measures as hospitalization or confinement would probably *not* be warranted in this case. The ALJ's substitution of his own lay opinion for that of Dr. Alfonso in assuming that Dr. Alfonso's treatment was not commensurate with the level of limitations assessed by Dr. Alfonso was error. See Gonzalez Perez, 812 F.2d at 749. Indeed, where a claimant's limitations arise from mental health problems, as in this case, "the need to rely on medical evidence as opposed to the ALJ's lay opinion appears even greater." Sklenar v. Barnhart, 195 F.Supp.2d 696, 700 (W.D. Pa. 2002) (citing Morales, 225 F.3d at 319) ("[t]he principle that an ALJ should not substitute his lay opinion for the medical opinion of experts is especially profound in a case involving a mental disability")).

Moreover, the Court finds that Dr. Alfonso's longitudinal treatment notes support the limitations provided in the September 4, 2009, Evaluation and show that Dr. Alfonso did not merely pursue a conservative approach to plaintiff's mental health treatment. Specifically, Dr. Alfonso's treatment notes indicate that plaintiff has been "alienat[ed] from family members" [AR at 261, 256, 259]; has suffered from increased psychiatric symptoms and has been mentally unstable despite treatment [see AR at 196, 198, 249, 254, 256-57, 259, 385, 388, 390, 407, 409, 415, 417, 419, 422, 425-30]; and has been chronically homeless (and when she did have a home in which to live, she stayed with an abusive man because she had no income and no place to

go). [See AR at 254, 256, 385, 388, 390, 409, 411, 415, 417, 419, 422, 425-28, 430.] The treatment record also reveals that Dr. Alfonso over the years regularly attempted new approaches with plaintiff's mental health treatment, i.e., by changing the dosages and types of plaintiff's psychiatric medications. [See AR at 196, 198-99, 244-46, 254, 257, 260-61, 395-405, 409, 415, 417, 422, 425-26.] To the extent the ALJ ignored those portions of the treatment record supporting Dr. Alfonso's opinions concerning plaintiff's mental limitations, that too was error. See Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983) (the ALJ may not selectively choose evidence in the record that supports his conclusions); Whitney v. Schweiker, 695 F.2d 784, 788 (7th Cir. 1982) ("an ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion") (citation omitted); Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (an ALJ is not permitted to reach a conclusion "simply by isolating a specific quantum of supporting evidence").

Next, insomuch as the ALJ rejected Dr. Alfonso's opinion because the ALJ concluded that she was unscrupulously attempting to help plaintiff obtain disability benefits, this basis for rejection was improper because the ALJ did not point to evidence showing any actual impropriety on the part of Dr. Alfonso. See Lester, 81 F.3d at 832 ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits.") (quoting Ratto v. Sec'y, Dept. of Health and Human Servs., 839 F.Supp. 1415, 1426 (D. Or. 1993)); see also Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (the source of report is a factor that justifies rejection only if there is evidence of actual impropriety or no medical basis for opinion). Here, the record contains no evidence that Dr. Alfonso embellished her assessment of plaintiff's limitations in order to assist plaintiff with her benefits claim. See Reddick v. Chater, 157 F.3d 715, 726 (9th Cir. 1998) (holding that the ALJ erred in assuming that the treating physician's opinion was less credible because his job was to be supportive of his patient).

Next, the ALJ may not properly reject a treating physician's opinion by merely referencing the contrary findings of another physician. Even when contradicted, a treating physician's opinion is still entitled to deference, and the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. See Orn, 495 F.3d at 632-33; SSR 96-2p; see also

Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 692 (9th Cir. 2009) ("to reject the opinion of a treating physician 'in favor of a conflicting opinion of an examining physician[,]' an ALJ still must 'make[] findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record'") (quoting Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002)). Here, the ALJ failed to provide specific and legitimate for rejecting Dr. Alfonso's opinion in favor of allegedly conflicting medical opinions.[7] The ALJ's rejection of Dr. Alfonso's opinion without expressly setting forth specific and legitimate reasons for doing so was improper. See Rollins, 261 F.3d at 856 ("The ALJ may not reject the opinion of a treating physician, even if it is contradicted by the opinions of other doctors, without providing 'specific and legitimate reasons' supported by substantial evidence in the record."); see also Hostrawser v. Astrue, 364 Fed.Appx. 373, 376-77 (9th Cir. 2010) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3) (ALJ erred in affording nontreating physicians' opinions controlling weight over the treating physicians' opinions, where the ALJ did not provide a thorough summary of the conflicting clinical evidence and his interpretations thereof with an explanation as to why his interpretations of the evidence, rather than those of the treating physicians, were correct). Further, the ALJ's general assertion that Dr. Alfonso's findings are not supported by the overall record is inadequate to reject Dr. Alfonso's treating opinion, as this reason fails to reach the level of specificity required for rejecting a medical opinion. See Embrey v. Bowen, 849 F.2d 418, 421-23 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required ... The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.") (footnote omitted).

---

[7] The Court observes that although the ALJ cited the psychiatric examination conducted by examining physician Dr. Duong [see AR at 295], in which Dr. Duong opined that plaintiff has mental limitations that are less severe than those assessed by Dr. Alfonso [compare AR at 376-83, with AR at 433-34], the ALJ in the decision did not highlight any specific **treating** physician's opinion that contradicted (or for that matter "thoroughly rebutted" [see AR at 296]) Dr. Alfonso's findings, and the Court did not find any such treating opinion in the record.

Finally, to the extent the ALJ concluded that plaintiff's hearing testimony does not support Dr. Alfonso's assessment of plaintiff's limitations, such a conclusion is unsupported by the record. At the January 8, 2010, hearing, plaintiff testified that she was homeless and that she had lived on the streets, in vacant buildings, and in another person's van. [AR at 491-92, 497.] In addition to her physical symptoms, plaintiff testified that she suffers from emotional problems, including mood swings that cause her to feel "real high" and "real low." However, plaintiff clarified that she is "mostly depressed," her depression is "horrible," and her physical problems contribute to her depression. [AR at 494-99.] Plaintiff also stated that she has "a hard time functioning ... around a lot of people" and experiences daily panic and anxiety attacks that typically last two hours, and for which she takes psychiatric medication that "helps a little bit." [AR at 494, 496, 500, 504.] However, plaintiff said that she wanted to change one of her medications because she believed that it was causing her to experience visual hallucinations. [AR at 496, 499-500.] Plaintiff also stated that her medications do not help improve her bipolar symptoms [AR at 500], and that in the time that she has been treated by Dr. Alfonso, her mental health has worsened. [AR at 501-02.] She further testified that she spends most of her day sitting in a van because she is "afraid to go out there in the world." [AR at 504.]

No part of plaintiff's testimony appears to be inconsistent with Dr. Alfonso's assessment in the 2009 Evaluation of plaintiff's work-related limitations. Indeed, the ALJ did not specifically explain why he found that plaintiff's testimony undermined Dr. Alfonso's opinion. [See AR at 296.] To the contrary, plaintiff's testimony that she is often depressed and experiences daily anxiety and panic attacks seems to support Dr. Alfonso's assessment that plaintiff would likely miss work three or more times each month due to her impairments or treatment. Further, plaintiff's homelessness and self-described symptoms of difficulty being around people, anxiety, depression, and hallucinations appear to support Dr. Alfonso's opinion that plaintiff is markedly limited in her abilities to, among other things, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers or peers without distracting them or exhibiting

behavioral extremes, and maintain socially appropriate behavior. [See AR at 433-34, 494-504.] Accordingly, plaintiff's testimony does not constitute a specific and legitimate reason for rejecting Dr. Alfonso's opinion. See Lester, 81 F.3d at 830; see also Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (error for an ALJ to ignore or misstate the competent evidence in the record in order to justify his conclusion).

Since the ALJ again failed in the 2010 decision to provide sufficient reasons for rejecting Dr. Alfonso's opinions regarding plaintiff's mental impairments (even after this Court remanded the ALJ's 2006 decision for proper consideration of Dr. Alfonso's findings), the Court now credits Dr. Alfonso's opinions as true. See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("Because the ALJ failed to provide legally sufficient reasons for rejecting ... [the] treating physicians' opinions, we credit the evidence as true.") (citing Harman v. Apfel, 211 F.3d 1172, 1179 (9th Cir. 2000); Smolen, 80 F.3d at 1281-83; Varney v. Sec'y of Heath and Human Servs., 859 F.2d 1396,1398 (9th Cir. 1988)). When a court reverses an ALJ's decision denying social security benefits, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Moisa v. Barnhart, 367 F.3d 882, 886 (9th Cir. 2004) (quoting INS v. Ventura, 537 U.S. 12, 16, 123 S.Ct. 353, 154 L.Ed.2d 272 (2002) (per curiam)). Here, the Court concludes that remand is necessary for the ALJ to assess plaintiff's RFC and disability status, after crediting Dr. Alfonso's assessments of plaintiff's mental impairments.[8]

/
/
/
/
/
/
/

---

[8] As the Court credits Dr. Alfonso's findings as true, which assign greater mental limitations than the opinion of Dr. Duong, the Court does not address plaintiff's contention of error with regard to the ALJ's consideration of Dr. Duong's opinion. [See JS at 3-5.]

14

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman, 211 F.3d at 1179; Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to consider plaintiff's RFC and disability status after crediting Dr. Alfonso's findings as true. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

DATED: February 14, 2011

PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE